**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

**FILED**

11/06/2023

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Case No. 1:08-cr-00034(DFH-KPF) |
| Vs. | * | |
| | * | HONORABLE JUDGE |
| JUAN ANTONIO CORONA-GONZALEZ | * | David Frank Hamilton |
| -Defendant- | * | |
| | * | November 2,2023 |

**DEFENDANT'S TITLE 18 U.S.C.§3582(c) MOTION**
**FOR A SENTENCE REDUCTION**

Pro Se defendant Juan A. Corona-Gonzalez, without benefits of counsel, hereby respectfully requests this Honorable Court for --- compassionate release to time served, or in the alternative, a -- sentence reduction to time the Court deems appropriate. Mr. Corona-Gonzalez relys on 18 U.S.C.§3582(c)(1), as interpreted in United States v. McSwain,25 F.4th 533(7th Cir.2022), and modification of his sentence would be consistent with applicable policy statements of the Sentencing Commission pursuant to §1B1.13(b)(6). Thereof, Mr. Corona-Gonzalez states as follows:-

**I**
**FACTUAL/PROCEDURAL HISTORY**

On February 14,2008, Mr. Corona-Gonzalez was taken into federal -- custody and a criminal complaint was filed against him in the -- Southern District of Indiana, charging him with knowingly possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. (Compl., Dkt. No. 1 at 1[1].) On February 27,2008, Mr. Corona-Gonzalez was indicted with

---

[1] "Dkt. No." refers to the district Court docket number of case United States v. Corona-Gonzalez, No. 1:08-cr-00034(S.D.Ind.) at which the document or item appears.

knowingly possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. (Indictment, Dkt. No.13). On May 13,2009, the Government filed a superseding indictment charging Mr. Corona-Gonzalez with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in Count I, knowingly distributing 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in -- Count II, and knowingly possessing a firearm during and in furtherance of a drug trafficking offense in Count III. (Superseding Indictment, Dkt.No.53). Mr. Corona-Gonzalez pleaded not guilty and proceeded to trial.  On August 3,2009, a jury trial was held by the Court. (Dkt. No.71). The Government's entire case rested on the testimonies -- provided by three agents who worked for Drug Enforcement Agency (DEA), i.e., Paul Buchman, Gerald C.Dooley, and Michael Cline. see Dkt. No.71. Specifically, as relevant to whether the methamphetamine was a --- mixture or ice (actual pure), the Government presented no evidence attesting to the purity of the methamphetamine attributed to Mr. -- Corona-Gonzalez. United States Sentencing Guidelines ("U.S.S.G.") dictate that unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance, U.S.S.G. Manual 2D1.1, cmt, application note A. And then the Guidelines note the exception for ice (actual pure), which is defined as a mixture or substance containing methamphetamine --- hydrochloride of at least 80% purity. 2D1.1, cmt, application note C.

DEA Agents Buchman, Dooley, and Cline while they all testified --
that methamphetamine was in the two plastic containers found in the
trap the DEA set up. Agent Dooley testified that a presumptive test
was done on the methamphetamine recovered from the defendant to ---
confirm whether it was methamphetamine. see Dkt. No.71 at 55 ("Then
as part of the processing..., the containers [were] then opened up
to expose the methamphetamine. A very minute quantity of it is what
we call field tested to insure the drug is what we believe it is. And
a field test is just a presumptive test, not a qualitative test. It
doesn't tell you percentages or anything like that. It just gives you
a presumptive test that, yes, it tests positive for methamphetamine.")
This testimony was the closest statements made in the entire evidence
introduced at trial regarding scientific testing of the drugs attributed
to Mr. Corona-Gonzalez. In sum, none of all the Government's witnesses,
agents Buchman, Dooley, and Cline who actually investigated this case
and conducted a minute test on the drug for methamphetamine, testified
that the drug was ice (pure actual) methamphetamine and not a mixture.
see Dkt.No.71 at 14-88. In contrary, Mr. Corona-Gonzalez had at least
660 grams of a mixture methamphetamine. see **EXHIBIT 1.**

After hearing the evidence in the case, the Court made the ---
following jury instructions as to purity of the methamphetamine --
attributed to Mr. Corona-Gonzalez:

> "For Counts I and II, the relevant weight is the weight
> of the total mixture. The government is not required
> to prove the degree of purity of any methamphetamine."
> see Dkt.No.74 at 157.

On August 4,2009, Mr. Corona-Gonzalez was found guilty to all ---
counts in the indictment. see Dkt.No.77.

**(a)**
## PRESENTENCE INVESTIGATION REPORT

A PreSentence Report (herein after "PSR") of Mr. Corona-Gonzalez was prepared by a U.S. Probation Officer for Southern District of Indiana. Using the now-outdated 2008 Federal Sentencing Guidelines Manual, the Probation Officer found that pursuant to the United States Sentencing Guidelines (herein after "U.S.S.G.") §4D1.1(c)(3), the base offense level was 34, based upon the finding that Mr. Corona-Gonzalez had at least 316.3 grams of actual pure methamphetamine. see **EXHIBIT 2** (PSR, paragraph 21). The PSR, however, contains no evidence or an explaination in support of the conclusion that there was at least 316.3 grams of actual pure methamphetamine. In fact, no scientific report or testimony was presented to corroborate the conclusion that there was 316.3 grams of actual pure methamphetamine, other than a notation that the drug was sent to a DEA laboratory and it was determined 316.3 grams was actual pure methamphetamine. see Id. (PSR, paragraph 14)("The two packages were seized and sent to the DEA North Central Laboratory for a chemical analysis where it was --- determined there was a total of 660.4 grams of a mixture or --- substance containing a detectable amount of methamphetamine, of which 316.3 grams were pure"). Thus, Mr. Corona-Gonzalez was subjected and actually sentenced based upon a finding by a Probation Officer and not beyond a reasonable doubt by the jury or admitted by him, a fact that increased his base offense level by two points higher, that resulted in higher sentence. The PSR also attributed two points to Mr. Corona-Gonzalez for allegation for allegation of obstruction of justice, that resulted in a total offense level of 36.

The PSR attributed five criminal history points to Mr. Corona-Gonzalez based upon his prior misdemeanor convictions of disorderly conduct, reckless driving, and three driving with suspended license violations. see id. (PSR, paragraph 33-38). Thus, the PSR --- recommended that Mr. Corona-Gonzalez be placed in the Criminal -- History Category III. id. While Mr. Corona-Gonzalez served no jail time of 30 days or more on any of these prior misdemeanors, the PSR presented that he was sentenced to two years probation on each one of them. However, according to the records in the State Court, it appears there was no specific period of probation or term included in the sentences imposed on both the disorderly conduct and --- reckless driving convictions.see **EXHIBIT 3.** A review of the State Court records indicates the disorderly conduct sentence consisted of jail time of 90 days with 88 days suspended and unspecified period of unsupervised probation. Nothing in the records indicates the Court imposed a term of two years probation, and its unclear, what if anything, did the probation Officer rely upon to conclude that a two years probation was imposed, of which was terminated on March 13, 2004. see **EXHIBIT 3.** Likewise, the reckless driving conviction,the Court imposed jail time of 364 days with all 364 days suspended, in addition to no similar violations for two years. Nothing indicates a term of probation was imposed. see id. And on the three driving with license suspended convictions, the sentences were imposed on the same day on March 13,2003, and a term of two years probation on each one of them. It appears the Court consolidated those terms of probation into a single probation that was terminated on 09-22-2003. It is worthy to note Mr. Corona-Gonzalez was a teenage young boy at

time when he committed these traffic violations and disorderly
conduct in 2001 and 2002.

**(b)**
**THE FIRST SENTENCING HEARING**

On November 24,2009, the Court held the sentencing hearing of Mr.
Corona-Gonzalez. At the hearing, the Court made a Guidelines ---
calculation consistent with the PSR. see Transcript of Sentencing
Proceedings, United States v. Corona-Gonzalez, No. 1:08-cr-0034, (
S.D.Ind.Nov.24,2009) at 5 (herein after "Tr."). Finding mr. COrona-
Gonzalez fell into a criminal history category III, the Court ---
sentenced him to 240 months imprisonment each on Count 1 and Count 2,
to run concurrent, and 60 months imprisonment on Count 3, to be --
served consecutively,..resulting in a total term of 300 months --
imprisonment. (Tr. at 10-11). In addition, the Court Ordered that
Mr. Corona-Gonzalez be surrendered to immigration authorities for
his deportation upon completion of his prison term. (Tr. at 12).
The Court noted that mr. Corona-Gonzalez's case was one of "lots of
aggravating circumstances and very little by of mitigation. Mr.
Corona-Gonzalez, you had already been deported from this country
before. You...returned and were dealing methamphetamine, when I look
at you as an individual, what I see is somebody...as I mentioned
deported before and returned in Order to deal drugs; somebody who
has consistently had all sorts of legal troubles."(Tr. at 13-14).)
The Court then went on to note that Mr. Corona-Gonzalez was going to
be "punished very severely" for his actions, and that his prison --
sentence was going to be followed by "another deportation."(Tr. at
14(emphasis added)). ON December 7,2009, the Court entered a final

6

judgment of Mr. Corona-Gonzalez, and he filed a timely notice of appeal on December 9,2009. (Notice of Appeal, Dkt. No.83).

### (c)
### THE SEVENTH CIRCUIT'S DECISION

Following written briefs, and oral argument on October 20,2010, the Seventh Circuit Court of Appeals reversed Mr. Corona-Gonzalez's sentence and remanded to this Court finding plain error that --- affected the "fairness, integrity or public reputation of [the] proceedings." see United States v. Corona-Gonzalez, No. 09-3993, slip Op. at 8-9(7th Cir.Dec.2,2010)(herein after "Op.") More --- specifically, the Seventh Circuit found that a procedural error -- occurred during Mr. Corona-Gonzalez's sentencing hearing, that is, the district Court was under the incorrect impression, in imposing Mr. Corona-Gonzalez's sentence, that he was previously deported. Id. at 8. In fact, the Seventh Circuit also noted that the district -- Court likely confused Mr. Corona-Gonzalez's history with that of his father, who was deported following a drug conviction. United States v. Corona-Gonzalez, No. 09-3993, slip.Op at 6 n.2(7th Cir.Dec.2,2010). The Seventh Circuit further held that the error affected Mr. Corona-Gonzalez's substantial rights because it was "left with the firm -- belief that there [was] a substantial chance that the district Court's misapprehension played a significant role in the adjudication of the defendant's sentence." id. at 9. As such, the Seventh Circuit vacated Mr. Corona-Gonzalez's sentence and remanded the case to the district Court in order to permit the district Court to reassess the sentence free of the factual misapprehension. id. at 13-14.

**(d)**
## THE SECOND SENTENCING HEARING

On March 1,2011, the Court held ReSentencing Hearing of Mr. Corona-Gonzalez. (Dkt. No.115). At the hearing, the Court begun by notating acknowledgment that, "one of the factors that I mentioned several -- times in exercising judgment when pronouncing sentence a little over a year ago for Mr. Corona-Gonzalez was a mistaken belief that the defendant had previously been deported after a prior drug trafficking conviction. I had apparently, ...been confused initially in the report about the defendant's father and attributed that to the defendant himself." see Transcript of Re-Sentencing Proceedings, United States v. Corona-Gonzalez, No. 1:08-cr-0034(S.D.Ind.March 1,2011) at 3-4 (herein after "Re."). The Court modified Mr. Corona-Gonzalez's sentences on Counts 1 & 2, and reduced it from 240 Months to 228 months on each count, to run concurrent with each other, followed by the unaffected 60 months consecutive sentence on Count 3. (Re. at 10). In modifying Mr. Corona-Gonzalez's sentence, the Court noted that, "the crimes are very serious. But let me be quite specific. I think there is some merit to the defendant's point ...; that Criminal --- History Category III is a little high for this defendant. But that is the point that got very little traction with me in November, 2009, -- based in part on my mistaken view of the defendant's record and the assumption of a prior deportation, followed by illegal re-entry for purposes of dealing in methamphetamine." "Under Guideline Section 4Al.3, I think it is most reasonable to treat Mr. Corona-Gonzalez as if he were in Criminal History Category II. And the prior record is not spotless, but the actual convictions for disOrderly conduct and

some traffic related crimes are relatively modest." (Re. at 11).
"....my mistaken understanding of Mr. Corona-Gonzalez's background
made that argument not at all persuasive to me a little over a year
ago. I think it has some weight. And so, I think the best I can do to
approximate that effect and impose a sentence, revised sentence that
is consistent with the 3553(a) factors, is the one year reduction --
based on a 4A1.3 downward departure for over representative Criminal
History." (Re. at 12). Thus, the Court reduced Mr. Corona-Gonzalez's
sentence from 240 months to 228 for Counts 1 and 2, to be served --
consecutively with 60 months sentence of Count 3. This resulted in
total imprisonment term of 288 months.

### (e)
### SENTENCE REDUCTION PURSUANT TO THE UNITED STATES SENTENCING COMMISSION AMENDMENT 782

On August 8,2016, Mr. Corona-Gonzalez submitted with this Court a
motion for reduction in sentence pursuant to the U.S.Sentencing
Commission Amendment 782. (Dkt. No.134). Amendment 782 is a retroactive
revision to the Sentencing Guidelines that lowered the base offense
level for most drug offenses by two levels. This new Amendment 782
Drug Quantity Sentencing Guidelines became effective since november
1,2014. see **EXHIBIT 4.** On July 24,2017, the Court granted Mr. corona-
Gonzalez's motion for a reduction of his sentence pursuant to ---
Amendment 782. (Dkt.No.149). Specifically, the Court reduced Mr. --
Corona-Gonzalez's sentences of his drug convictions on Counts I and II.
A review of the sentencing history of Mr. Corona-Gonzalez indicates,..
prior to enacting Amendment 782 into law, the initial base offense ...

level for 150 grams but less than 500 grams of actual pure (ice) methamphetamine was 34 using the now-outdated 2008 U.S.Sentencing Guidelines Manual. see **EXHIBIT 2** (PSR, paragraph 20-21). Two points level was added for obstruction of justice, resulting in a total base offense level of 36. see id. With a Criminal History Category III, sentencing guide range was 235-293 months imprisonment. At his first sentencing, the Court imposed a term of 240 months for his drug convictions. On remand from the Seventh Circuit the Court --- modified Mr. Corona-Gonzalez's sentence and reduced it from 240 to 228 months, noting a 4A1.3 downward departure for over representative criminal history reasoning that Mr. Corona-Gonzalez should be ---- treated as if he was in Criminal History Category II, because his prior convictions were petty traffic violations and a disOrderly -- conduct. Few years later, Amendment 782 lowered Mr. Corona-Gonzalez's base offense level from 34 to 32, resulting in a total offense level of 34 with a sentencing guideline range of 188-235. The Court reduced Mr. Corona-Gonzalez's sentence from 228 months to 192 months term of imprisonment. However, its unclear whether the Court reconsidered the 4A1.3 downward departure for over representative criminal --- history and treated Mr. Corona-Gonzalez as if he were in Criminal History Category II when it reduced his sentence to 192 months pursuant to Amendment 782.

## II
## CHANGE IN LAW/SENTENCING DISPARITY

In 2013, the United States Supreme Court decided <u>Allen Alleyne v. United States</u>,570 U.S.99,133 S.Ct.2151,186 L.Ed.2d 314(2013), --

holding that, "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict -- must be admitted by the defendant or proved to a jury beyond a reasonable doubt." This decision extended the principles announced in Apprendi v. New Jersey,530 U.S.466,120 S.Ct.2348,147 L.Ed.2d 435 (2000) and United States v. Booker,543 U.S.220,125 S.Ct.738,160 L. Ed.2d 621(2005). In this regard, (and indeed, as relevant to Mr. Corona-Gonzalez's claim), --in 2020, the Seventh Circuit Court of Appeals decided United States v. Carnell,972 F.3d 932(7th Cir.2020), holding that a defendant's statements and law enforcement expertise alone cannot establish the purity of methamphetamine to meet the -- Government's burden to prove it is "actual pure (ice) methamphetamine for Guidelines enhancement purposes. In this Carnell holding, the Seventh Circuit announced what evidence could and could not be used to establish the purity of methamphetamine. The Seventh Circuit -- eliminated the utility of several categories of evidence, including the label assigned to the drugs by users and dealers (i.e, "everyone referred to the drugs as ice"); testimony from users, dealers, or other individuals (including law enforcement) not supported by -- scientific testing; and the appearance of the drugs. Id. at 942. Other methods of proof may be available, but the Seventh Circuit directed that "[s]cientific testing of at least part of a quantity of suspected 'ice' methamphetamine seized from a suspect is one of the strongest means by which the Government can meet its burden." Id. at 943. The Guidelines treats a methamphetamine mixture that is at least 80% pure as "actual" methamphetamine. §2D1.1, note C.

The Seventh Circuit held that experience with drugs alone is --
insufficient to meet the Government's burden of establishing purity
with required degree of accuracy. United States v. Carnell,972 F.3d
932(7th Cir.2020). The United States sentencing Guidelines distinguish
between mixtures involving run-of-the-mill methamphetamine and --
methamphetamine that is at least 80% pure. U.S.S.G.§2D1.1, note C.
The latter the Guidelines refer to as "ice," and that definition
carries with it sentences that are substantially higher than those
for non-ice methamphetamine. For a thoughtful discussion of the --
disparity in sentencing between a mixture methamphetamine and actual
pure ('ice') methamphetamine was developed in various Court decisions.
see,e.g., United States v. Hendricks,370 F.Supp.3d 1104,1105(D.Idaho
2018). In creating the First Step Act's independently authorized --
procedures, a Court may presume that Congress legislated in light
of current constitutional requirements. see Hnederson,2019 U.S.
Dist.LEXIS 117402,2019 WL 3211532, at *4 n.8(rejecting the argument
that, because Congress did not expressly authorize retroactive ---
application of Alleyne under the First Step Act, it does not apply);
United States v. Stanback,377 F.Supp.3d 618,623(W.D.Va.2019)(---
"Congress, when drafting the First Step Act in 2018, surely did not
intend for Courts to disregard the last Six years of Supreme Court
federal sentencing jurisprudence and this Court declines to do so.")
To find otherwise would mean that Congress legislated without regard
to constitutional norms, which is a conclusion Courts have consistently
rejected. see,e.g., United States v. Dodd,372 F.Supp.3d at 797-98
(concluding that, because Apprendi and Alleyne are binding on the

12

Court today, they apply to sentence reductions under the First Step
Act); United States v. Graves, No.04-070,2019 U.S.Dist.LEXIS 117171,
2019 WL 3161746, at *2(E.D.Tenn.July 15,2019)("The First Step Act
neither directs nor implies that the Court should perpetuate the
application of an unconstitutional practice when determining a new
sentence that complies with the Act's directives, and many Courts
faced with the issue have applied the Apprendi rule in First Step Act
re-sentencings.")(citation and internal quotation marks omitted);
United States v. VanBuren, No.00-00066-1,2019 U.S.Dist.LEXIS 117842,
2019 WL 3082725, at *3(W.D.Va.July 15,2019)("[T]his Court joins others
in this district finding the holdings of Apprendi and Alleyne ---
applicable in the First Step context with respect to whether the --
statutory penalties have been modified."). Thus, pursuant to United
States v. McSwain,25 F.4th 533(7th Cir.2022) the Court may consider
the intervening changes in law and sentence disparity regarding --
purity of the methamphetamine Mr. Corona-Gonzalez was convicted of,
for its determination for a reduction in sentence.

### III
### U.S.SENTENCING GUIDELINES MANUAL §1B1.13

The Sentencing Commission is required by 28 U.S.C.§994(a)(2) to
develop general policy statements regarding application of the --
United States Sentencing Guidelines and other aspects of sentencing
that in the view of the Sentencing Commission would further the
purposes of sentencing (18 U.S.C.§3553(a)(2)), including, among
other things, the appropriate use of the sentence modification ---
provisions set forth in 18 U.S.C.§3582(c). In doing so, the ----
Sentencing Commission is authorized and required by 28 U.S.C.§994(t)

to describe what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be -- applied and a list of specific examples. This policy statement -- implements 28 U.S.C.§994(a)(2) and (t), and the Sentencing Commission just did that and amended the United States Sentencing Guidelines Manual §1B1.13 that became law effective from November 1,2023. Specifically, as relevant to the instant case and Mr. Corona-Gonzalez's ground for relief, §1B1.13(b)(6) states as follows:-

> ### 1B1.13(b)(6) Reduction in Term of Imprisonment Under 18 U.S.C.3582(c)(1)(A)(Policy Statement)
>
> **UNUSUALLY LONG SENTENCES.** If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would -- produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. Id.

In the instant case, the Government failed to meet its burden to prove that the methamphetamine in which Mr. Corona-Gonzalez dealt was actual pure (ice) methamphetamine, and therefore, he should have been sentenced as though he was involved in distribution of a mixture methamphetamine that was less than 80% pure. Definition of actual pure ('ice') methamphetamine carries substantially higher -- sentences than a non-pure or ice methamphetamine of less than 80% pure. see U.S.S.G.§2D1.1,note C. Indeed, the sentence disparity in this case is clearly undisputable, no evidence, including scientific to support somehow half of 660 grams of methamphetamine was actual pure or was at least 80% pure. In fact, the jury was instructed not

to be concerned about the purity of the methamphetamine.

## IV
## LEGAL ANALYSIS

To be entitled to relief under Title 18 U.S.C.§3582(c)(1)(A) as amended by the First Step Act, Mr. Corona-Gonzalez is required to meet both the exhaustion requirement and demonstrate that --- extraordinary and compelling reasons warrant a reduction of his sentence. Mr. Corona-Gonzalez satisfies both requirements and -- discuss them as follows:-

## (1)
## ADMINISTRATIVE EXHAUSTION

On September 28,2023, Mr. Corona-Gonzalez submitted a written request for compassionate release with Warden, B.Birkholz (**EXHIBIT 5**) at USP Lompoc. No response has been received by Mr. Corona-Gonzalez as of today's date of November 1,2023. As amended by the First Step Act of 2018, §3582(c)(1)(A) states as follows:-

> "The Court upon motion of the defendant after the
> defendant has fully exhausted all administrative
> rights to appeal a failure of the Bureau of Prisons
> to bring a motion on the defendant's behalf or lapse
> of 30 days the receipt of such a request by the Warden
> of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment....." Id.

Based upon the date of September 28,2023 when Mr. Corona-Gonzalez submitted a written request for compassionate release with the -- Warden, it appears 30 days have lapsed on October 28,2023. Thus, it may be appropriate to conclude that Mr. Corona-Gonzalez has -- satisfied this requirement and he is indeed permitted to petition for compassionate release directly with this Court.

**(2)**
**EXTRAORDINARY AND COMPELLING REASONS**
**FOR A SENTENCE REDUCTION**

18 U.S.C.§3582(c)(1)(A) authorizes this Honorable Court to reduce
Mr. Corona-Gonzalez's sentence if it finds that there is an ---
extraordinary and compelling reasons for such a reduction in
sentence. Section 3582(c) allows a sentence reduction if such --
a reduction is consistent with the applicable policy statements
issued by the Sentencing Commission. The Court may evaluate a --
prisoner-initiated motion for compassionate release with due regard
for the guidance provided in §1B1.13 because it "provide[s] a ...
working definition of 'extraordinary and compelling reasons' which
may guide discretion without being conclusive." United States v. Gunn,
980 F.3d at 1180(7th Cir.2020); see also United States v. Mays, Case
No.1:08-cr-00125-TWP-DML,2020 U.S.Dist.LEXIS 231255,2020 WL 7239530,
at *3(S.D.Ind.Dec.9,2020)(evaluating compassionate release motions
brought under the "extraordinary and compelling" prong of §3582(c)
(1)(A) with "due regard" for §1B1.13).

Compelling means not only emotionally unfair, but also disparate
treatment of similarly-situated individuals. see,e.g., Dell v.
United States,710 F.3d 1267(11th Cir.2019)(Martin J. concurring)("We
cannot explain to the public or Mr. Dell's family why the rules
prevent him but not his more culpable co-defendant from returning
home sooner."); Martin v. Franklin Capital Corp.,546 U.S.132,139
(2005)(an example of compelling is a violation of a basic principle
of justice [such as like cases should be decided alike].) Several
Courts across the nation have held that the policy statement at
U.S.S.G.§1B1.13 is binding on a district Court. see,e.g., United

16

States v. Bryant,996 F.3d 1243,1252-62(11th Cir.2021). And that a
district Court may not reduce a sentence under Section 3582(c)(1)(A)
unless a reduction would be consistent with §1B1.13. Id. at 1262.
Section 1B1.13 listsamong other reasons that are extraordinary and
compelling is **"Unusually Long Sentences"** and **"a change in law."** see
§1B1.13(b)(6).Mr. Corona-Gonzalez relys on this §1B1.13(b)(6) for
a sentence reduction based upon a change in law and unusually long
sentence. Specifically, pursuant to United States v. Carnell,972 F.3d
932(7th Cir.2020), if sentenced today for the same conduct, the ---
Government would be required to prove the substance was at least 80%
pure methamphetamine, or otherwise, the base offense level would be
30 and Mr. Corona-Gonzalez would be facing a sentence guideline of
151-188 months (with adjustments). see **EXHIBIT 4.** The Seventh Circuit
noted in the Carnell decision that the lab. reports merely confirmed
the substance was methamphetamine but did not measure its purity --
because the two agencies conducting the testing lacked the capability
to do so. Carnell was sentenced to 192 months in prison based on a
Guidelines Offense Level of 36 (after adjustments). The Seventh --
Circuit observed that, "the Guidelines advocates upward departures
for drugs of a higher purity, (§2D1.1, commentary App. note 27(C)),
and treats a methamphetamine mixture that is "at least 80% pure" as
actual methamphetamine under §2D1.1, note C. The Seventh Circuit --
vacated Carnell's sentence and remanded for resentencing,...holding
that, "the Government bears the burden of establishing that the --
methamphetamine [the defendant] involved in is the methamphetamine
described in the Guidelines at §2D1.1, note C. see Id.

Unlike Carnell's case where the Government actually presented

some lab. reports arguing the substance was pure methamphetamine,...

there was no any lab. reports or evidence the Government introduced

to support the conclusion that the methamphetamine Mr. Corona-Gonzalez

involved in was at least 80% pure as required by the current law in

the Seventh Circuit under United States v. Carnell,972 F.3d 932 (7th

Cir.2020). In fact, DEA Agent Dooley confirmed at trial that the ---

substance Mr. Corona-Gonzalez involved in was not tested for purity,

but only tested for identifying whether the substance was  ......

methamphetamine. see, Dkt.No.71 at 55:

> "....as part of the processing, the containers [were]
> then opened up to expose the methamphetamine. A very
> minute quantity of it is what we call field tested to
> insure the drug is what we believe it is. And a field
> test is just a presumptive test, not a qualitative
> test. It doesn't tell you percentages or anything like
> that. It just gives you a presumptive test that, yes,
> it tests positive for methamphetamine." Id.

A further review of the record before this Honorable Court also --

indicates that not only the Government failed to prove beyond a --

reasonable doubt that the methamphetamine was at least 80% pure, but

the Jury was instructed that, "the Government was not required to --

prove the degree of purity of any methamphetamine. see, Dkt.No.74 at

157 ("For Counts I and II, the relevant weight is the weight of the

total mixture. The Government is not required to prove the degree

of purity of any methamphetamine"). Any fact (other than a prior --

conviction) which is necessary to support a sentence exceeding the

maximum authorized by the facts established by a plea of guilty or

a jury verdict must be admitted by the defendant or proved to a jury

beyond a reasonable doubt. Alleyne v. United States,570 U.S.99,133

S.Ct.2151,186 L.Ed.2d 314(2013). The touchstone for determining ---

whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged offense. In Apprendi v. New Jersey (2000) 530 U.S.466, 120 S.Ct.2348,147 L.Ed.2d 435,2000 U.S.LEXIS 4348, the Supreme Court held that a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed. Apprendi's definition of elements necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. Thus, the purity of methamphetamine is an element of drug charges against Mr. Corona-Gonzalez and was required to be submitted to the jury and found -- beyond a reasonable doubt. see,e.g., United States v. Kyle Soto, 2023 U.S.App.LEXIS 1707(8th Cir.Jan.24,2023)(finding the defendant's sentence on the possession runs afoul of Apprendi); United States v. Newton,No.02-30020,2019 U.S.Dist.LEXIS 33356,2019 WL 1007100, at *4 (W.D.Va.Mar.1,2019)(noting that, for a First Step Act defendant -- originally sentenced in 2003, the government agrees that the Court should recalculate the advisory guideline range under current law, and pursuant to the now-operative version of the United States -- Sentencing Guidelines, assess the section 3553(a) factors based on the facts in the record and issue a new sentence).

Pursuant to United States v. McSwain,25 F.4th 533,537(7th Cir. 2022), a sentence reduction has a two-step inquiry. The first --- question is whether the defendant is eligible for a sentence --- reduction. Hudson,967 F.3d at 610. And the second question for the district Court is whether it should reduce the sentence. Id.(emphasis

in original). First can; then second should. When considering step two, "the First Step Act allows district Courts to consider --- intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to section 3582(c)." Concepcion v. United States,142 S.Ct.2389,2404,213 L.Ed.2d 731(2022). For example, district Courts may consider Guidelines Amendments when raised by the parties and other facts. Id. at 2402-03; see also United States v. King,40 F.4th 594,596(7th Cir.2022)(noting that Concepcion "held that when substantive changes made by the First Step Act entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing"). Thus, pursuant to McSwain, this Court has discretion to consider the intervening changes in law with regards to the purity of methamphetamine under the current law and standard established by the Seventh Circuit -- decision in United States v. Carnell,972 F.3d 932(7th Cir.2020). And under this discretion, the Court further, may factor in the --- statutory sentencing range, (for 500 grams but less than 1.5 kilo-grams of methamphetamine), of 151-188 months (after adjustments) as it considers the other §3553(a) factors to decide whether it should, in fact, reduce Mr. Corona-Gonzalez's sentence to time served. In fact, the current new U.S.S.G. Manual at §1B1.13 includes among other factors for extraordinary and compelling reason, "a change in law" and "Unusually Long Sentences." §1B1.13(b)(6).

V
### SECTION 3553(a) FACTORS

"[B]y dint of §3582(c)(1)(A)'s plain text, a district Court may --

reduce a term of imprisonment if (1) the §3553(a) sentencing factors favor doing so, (2) there are extraordinary and compelling reasons for doing so, and (3) the reduction is consistent with the policy statement found at §1B1.13. Under the policy statement, a defendant may establish extraordinary and compelling reasons for a sentence reduction if there is a change in law, or a sentence disparity, or unusually long sentence. §1B1.13(b)(6). Applying the §3553(a) --- factors to Mr. Corona-Gonzalez's case, despite the seriousness of his offenses, there were nonviolent in nature, (i.e., possession -- with to distribute a controlled substance and possession of a fire-arm);...suggesting after over 16 years in prison Mr. Corona-Gonzalez has reflected on his actions in the crimes, and he is less likely to perpetuate violent crimes if released from prison. see,e.g., -- United States v. Georges,2022 U.S.Dist.LEXIS 116145(S.D.Fla.June 30,2022)(while the Court does not undermine the seriousness of --- defendant's crimes, it notes these were non-violent offenses). And with regards to the need to provide just punishment and promote respect for the law, Mr. Corona-Gonzalez has satisfied the portion of his prison sentence, or at least most of it that justifies a --- sentence reduction to time served. In otherwords, if sentenced today pursuant to the Seventh Circuit decision in "Carneel," and with a Criminal History Category II (pursuant to the Court's previously application of 4A1.3 downward departure for over representative -- criminal history), Mr. Corona-Gonzalez's sentencing guidelines range would be "135-168 months," of which he has already served. Thus, a sentence reduction to time served represents a substantial punishment reflecting the gravity of the underlying offenses of Mr. Corona-

Gonzalez. see <u>Thompson</u>,984 F.3d at 434-35(recognizing that ----
compassionate release has been granted to defendants who have --
already served the lion's share of their sentences). Furthermore,
the nature and circumstances in which Mr. Corona-Gonzalez's ----
sentence was imposed, (i.e., a finding by the Court that the ---
substance was pure methamphetamine and the Government needed not
prove the purity of it), do not justify further incarceration under
§3553(a) factors. There be no doubt the need to protect the public
from further crimes of the defendant is of great concern to the ---
Court. §3553(a)(C). However, incarceration is not the only kind of
sentence available, and there are other ways to achieve the same
public protection. §3553(a)(3). For example, a deportation of a --
noncitizen may be considered by the Court for a sentence reduction,
as the noncitizen defendant is returning to the community outside
the United States. see,e.g., <u>United States v. Reyes Filiciano</u>,2023
U.S.Dist.LEXIS 99814(D.N.M.June 8,2023)(reducing defendant's ----
sentence to time served and Ordered his release to the custody of
ICE for his deportation); <u>United States v. Francisco Perea</u>,2023
U.S.Dist.LEXIS 96835(D.Kan.June 5,2023)(Adopting the reasons stated
in the defendant's Pro Se motion including the fact he will be --
deported upon release, and reduced his sentence of 292 months to
time served); <u>United States v. Camacho-Duque</u>,2020 U.S.Dist.LEXIS
188532, at *19(S.D.Fla.Oct.5,2020)(finding that the defendant's
risk of recidivating is perhaps non-existent because she would be
transferred to ICE custody); <u>United States v. Pompey</u>,No.CR-97-
0638-RB,2020 U.S.Dist.LEXIS 123517,2020 WL 3972735, at *5(D.N.M.
July 14,2020)("The Government offers no persuasive reason that the

Court may not grant compassionate release and Order immediate --
release from BOP custody to ICE pursuant to the detainer"); United
States v. Molina Acevadeo, No.18-CR-365(LGS),2020 U.S.Dist.LEXIS
104558,2020 WL 3182770, at *4(granting compassionate release and
Ordering the defendant to be released into ICE custody for removal
to Mexico); United States v. Ardila,No.3:03-cr-264(SRU),2020 U.S.
Dist.LEXIS 77010,2020 WL 20977361, at *2(D. Conn.May 1,2020)("Upon
release from BOP custody he shall enter the custody of immigration
and customs enforcement pursuant to his underlying detainer.")

    Here in the case at hand, the Immigration and Customs ---
Enforcement ('ICE') have lodged a detainer against Mr. Corona-
Gonzalez for his deportation to Mexico upon his release from the BOP
custody. see **EXHIBIT 6.** Thus,...any lingering public safety concerns
are mooted by the fact Mr. Corona-Gonzalez will be deported upon his
release from the prison,...a fact that may be inferred to that Mr.
Corona-Gonzalez does not present or pose a danger to the safety of
anyone or the community at large, as he will be returning to a --
community outside the United States, of which by itself is a severe
punishment to Mr. Corona-Gonzalez whose daughter resides in the United
States. Padilla v. Kentucky,559 U.S.356,364,130 S.Ct.1473,176 L.Ed.
2d 284("...[D]eportation is an integral part-indeed, sometimes the
most important part-of the penalty that may be imposed on noncitizen
defendants..."). Furthermore, Mr. Corona-Gonzalez's other minor ---
daughter, who resides in Mexico, is increasingly exposed to serious
physical, mental, and sexual abuse consistently carried out by the
gangs and cartel who frequentlty kidnap young girls.  Mr. Corona-

Gonzalez recently received a letter from his ex-girlfriend and ---
mother to his daughter stating that their daughter is not doing so
well and she that she cannot afford anymore to cater for their daughter
because she isᵴfinancially struggling and the bills are piling up.
see **EXHIBIT 7**. In the letter, Ms. Maria Morales-Vivian,---Mr. Corona-
Gonzalez's ex-girl friend pleads with him to get home sooner for
fears of what may happen to their daughter. see Id. Mr. Corona-
Gonzalez's parents are aging and suffering of various medical conditions.
They had broke down while talking on phone with Mr. Corona-Gonzalez,
fearing that they may die before seeing the son again who they last
saw as a young teenage boy. They always say, "son you never killed
anyone or assault anybody, you only possessed some drugs and now we
might die without ever seeing you again." And on his own part, Mr.
Corona-Gonzalez apologizes to the Court, the Government, and the --
community at large for dealing in drugs.

Lastly, a particularly relevant factor in this case is the need
to avoid unwarranted sentence disparities among defendants with ---
similar records who have been found guilty of similar conduct. see
§3553(a)(6). Indeed, under the totality of the circumstances in
this case, and on the record before this Court, the discretion of this
Hon. Court as interpreted by the Seventh Circuit in United States v.
McSwain,25 F.4th 533(7th Cir.2022) and the authority pursuant to
United States v. Carnell,972 F.3d 932(7th Cir.2020) and policy --
statement at §1B1.13(b)(6), Mr. Corona-Gonzalez is hereby respectfully
requests this Honorable Court for a sentence reduction to time served,
as he has satisfied the portion of his sentence if he were to be ---

sentenced today, or in the alternative, a sentence reduction to time the Court deems just and appropriate.

**WHEREFORE,** for the foregoing reasons and any other reasons the Court deems just and appropriate, Mr. Corona-Gonzalez prays that the Court takes into its consideration the totality of the circumstances in his case, the Seventh Circuit decision in Carnell and the policy statement at §1B1.13(b)(6), and **GRANT** him a sentence reduction to time served. Mr. Corona-Gonzalez also requests for Order directing his immediate release to the custody of ICE for his deportation to Mexico pursuant to ICE detainer.

Respectfully Submitted

_Juan A. Corona Gonzalez_

November 2,2023
DATE

Juan Antonio Corona-Gonzalez
#08825-028
USP Lompoc
3901 Klein Boulevard
Lompoc, CA 93436