UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:08-CR-00034-JRS-MJD |
| | ) | |
| JUAN ANTONIO CORONA-GONZALEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
*PRO SE* MOTION FOR A REDUCTION OF SENTENCE**

Defendant Juan Antonio Corona-Gonzalez has moved *pro se* for a reduction of

his sentence to time served under Title 18, United States Code, Section 3582(c)(1).  In

support thereof, Corona-Gonzalez cites the recently promulgated Section 1B1.13(b)(6)

of the United States Sentencing Guidelines.  At the outset, Corona-Gonzalez's motion

should be denied because the United States Sentencing Commission exceeded its

authority in promulgating subsection (b)(6).  Alternatively, even if subsection (b)(6)

were valid, Corona-Gonzalez cannot identify a "change in law" that produces a "gross

disparity" between his current sentence and the sentence likely to be imposed today.

And in all events, the Section 3553(a) factors independently preclude relief.

## I.     BACKGROUND

On May 13, 2009, a federal grand jury returned a three-count superseding

indictment against Corona-Gonzalez charging him with possessing with the intent to

distribute 500 grams or more of a mixture or substance containing a detectable

amount of methamphetamine (Count One); distributing 500 grams or more of a

1

mixture or substance containing a detectable amount of methamphetamine (Count Two); and possessing a firearm during and in furtherance of a drug-trafficking offense (Count Three). (Dkt. No. 53.) On August 4, 2009, after a two-day trial, a jury found Corona-Gonzalez guilty of all counts. (Dkt. No. 77.)

Prior to Corona-Gonzalez's sentencing, the United States Probation Office prepared a Presentence Investigation Report. (*See* Dkt. No. 157-1 at 5–10.) The PSR calculated Corona-Gonzalez's base offense level as 34, based on his distribution of at least 150 grams but less than 500 grams of "pure" methamphetamine. In support of that finding, the PSR cited lab results from the Drug Enforcement Agency's North Central Laboratory, which determined that the drugs attributable to Corona-Gonzalez on Count Two were 660.4 grams of a mixture or substance containing a detectable amount of methamphetamine, of which 316.3 grams were "pure" methamphetamine. (*Id*. at 6, ¶ 14.) The PSR also assessed a two-level increase to Corona-Gonzalez for testifying falsely at trial, resulting in a total offense level of 36. (*Id*. at 8.) Additionally, the PSR assigned Corona-Gonzalez Criminal History Category III. (*Id*. at 10, ¶ 38.) All told, Corona-Gonzalez faced an advisory guideline range of 235 to 293 months' imprisonment on Counts One and Two, with an additional 60 months consecutive on Count Three. (*See* Dkt. No. 104 at 5–6.)

On November 24, 2009, the Court conducted a sentencing hearing. At the hearing, neither Corona-Gonzalez nor his counsel raised any objection to the DEA North Central Laboratory results. (*See id*. at 3–4.) The Court accepted the PSR's findings as to the advisory guideline range and criminal history score. (*Id*. at 5–6.)

After considering the Section 3553 factors, the Court sentenced Corona-Gonzalez to a term of 240 months on Counts One and Two, to run concurrently, and a term of 60 months on Count Three, to be served consecutively, for a total term of 300 months' imprisonment.  (*Id.* at 10–11.)  In reaching its conclusion, the Court remarked on Corona-Gonzalez's apparent previous deportation from the United States.  (*Id.* at 14.)

Shortly thereafter, Corona-Gonzalez appealed his sentence to the Seventh Circuit.  On appeal, Corona-Gonzalez argued that since he had never been deported from the United States, the district court's remark on that nonexistent fact significantly affected the court's judgment.  The Seventh Circuit agreed and reversed for resentencing.  *See United States v. Corona-Gonzalez*, 628 F.3d 336 (7th Cir. 2010).

A resentencing hearing was held on March 1, 2011.  At the behest of defense counsel, the Court found that certain of Corona-Gonzalez' prior convictions were modest, and thus it was more reasonable to treat him as a Criminal History Category II.  (Dkt. No. 122 at 11.)  After considering the Section 3553(a) factors, the Court adopted a one-year downward departure for overrepresentation of criminal history, resulting in a modified sentence of 228 months for Counts One and Two (leaving Count Three unchanged for a total sentence of 288 months).  (*Id.* at 10–11.)

On August 8, 2016, Corona-Gonzalez filed a motion for reduction of sentence pursuant to Section 3582(c)(1).  (Dkt. No. 134.)  The grounds for the motion arose from Amendment 782 to the United States Sentencing Guidelines.  As the Court is well aware, Amendment 782 lowered the penalties for most drug offenses by reducing most base offense levels by two levels.  When Corona-Gonzalez was originally

sentenced in 2009, the Guidelines called for a base offense level of 34 for distributing at least 150 grams but less than 500 grams of "pure" methamphetamine. Following adoption of Amendment 782, which the Commission ultimately made retroactive, the base offense level for that same quantity was 32 (and remains so today). *See* U.S.S.G. § 2D1.1(c)(4). Thus, Corona-Gonzalez revised total offense level was 34, rather than 36 as originally accessed. When cross-referenced to Criminal History Category III, the newly calculated guideline range on Counts One and Two at the time of Corona-Gonzalez's motion for reduction of sentence was 188 to 235 months' imprisonment (as opposed to 235 to 293 months when Corona-Gonzalez was sentenced on remand). *See* U.S.S.G. Sentencing Table. If considered as Criminal History Category II—as Corona-Gonzalez has consistently urged—his advisory guideline range would have been 168 to 210 months at the time (and remains so today). *Id*.

On July 24, 2017, the Court granted Corona-Gonzalez's motion and reduced his sentence on Counts One and Two from 228 months to 192 months, a 36-month reduction of sentence. (Dkt. No. 149.) Corona-Gonzalez is currently housed at USP Lompoc, with an anticipated release date of July 16, 2026.

## II.     ARGUMENT

Corona-Gonzalez now asks the Court to further reduce his sentence based this time on the recently promulgated amendment to the Sentencing Guidelines relating to "unusually long sentences." *See* U.S.S.G. § 1B1.13(b)(6). Essentially, Corona-Gonzalez argues that an intervening change in law has produced a gross disparity

between the sentence being served and the sentence likely to be imposed today and thus he is entitled to compassionate relief. His argument fails at the outset.

First, the United States Sentencing Commission exceeded its authority in promulgating Section 1B1.13(b)(6). Although Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and therefore is invalid. Even if it were valid, Corona-Gonzalez does not meet the criteria for relief under subsection (b)(6) as he fails to identify a relevant "change in the law" or "gross disparity" between his current sentence and the sentence that would be imposed today. Indeed, the Court has previously ameliorated any supposed disparity when it granted Corona-Gonzalez's previous motion for reduction of sentence. In any event, the Section 3553(a) factors independently preclude relief. The Court should therefore deny the motion.

### a. The Sentencing Commission Exceeded Its Congressionally-Delegated Authority in Promulgating Subsection (b)(6).

Pursuant to the Sentencing Reform Act of 1984, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560 U.S. 817, 820 (2010). Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain circumstances. 18 U.S.C. § 3582(c). One such circumstance authorizes a court to reduce a term of imprisonment, after considering the factors set forth in Section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In turn, Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). As originally enacted, Section 3582 authorized such reductions only upon motion of the Director of the Bureau of Prisons (BOP).

In the First Step Act of 2018, Congress amended Section 3582(c) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. Shortly after the First Step Act's enactment, however, the Sentencing Commission lost a quorum of voting members and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons," as noted below.

In 2022, the Commission regained a quorum, and after public notice and comment voted on April 5, 2023, to promulgate amendments to the Guidelines, including to Section 1B1.13's policy statement. *See* Sentencing Commission Public Meeting Tr. 27–82 (Apr. 5, 2023) ("4/5/23 Tr.").[1] As relevant here, the amendments purport to allow consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an

---

[1] *Available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. *See* 4/5/23 Tr. 81-82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id*. at 60. In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role." *Id*. at 60–61. Nevertheless, the Commission submitted its proposed amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254.

*1. The Commission Cannot Act Contrary to the Statute.*

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both *extraordinary* and *compelling*. Moreover, such a delegation of authority is not unlimited. Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011). The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997).

*2. Subsection (b)(6) Conflicts With Section 3582(c)'s Plain Text, Context, and Purpose—As the Court of Appeals Has Held.*

No reasonable interpretation of the phrase "extraordinary" and "compelling," particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The court of appeals has already held as much, determining that Section 3582(c)(1)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances.

Specifically, in *United States v. Thacker*, the Seventh Circuit held that "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a

mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstances warranting a sentencing reduction." 4 F.4th 569, 574 (7th Cir. 2021). More broadly, on the topic of intervening changes in law, the *Thacker* court noted that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for a particular violations of a statute." *Id.*; *see also id.* ("Rationales along those lines cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law.").

The Commission's recent policy statement—which purports to allow intervening developments in sentencing law to constitute "extraordinary and compelling" reasons in direct conflict with *Thacker*—cannot provide a basis to reconsider that precedent, because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005). Put differently, the court of appeals' determination in *Thacker* remains binding here and the Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal v. United States*, 516 U.S. 284, 290, 294 (1996). The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *See Mayo Found.*, 562 U.S. at 58; *LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

This circuit's precedent, in any event, is correct. As a matter of plain language, an intervening change in the law is neither "extraordinary" or "compelling. The word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971)). There is "nothing 'extraordinary' about new . . . caselaw, or a contention that the sentencing judge erred" in light of such case law, because such developments "are the ordinary business of the legal system." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022).

An intervening development in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1), it must provide a "powerful and convincing" reason to disturb the finality of a federal sentence. *United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022). "But given the availability of direct appeal and collateral review under section 2255 of title 28," there is no powerful and convincing reason to allow prisoners to pursue claims of error under Section 3582(c)(1)(A)(i). *Id*. at 1200. Accordingly, an intervening development in sentencing law cannot serve as an "extraordinary" or a "compelling" reason for a sentence reduction.

Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law. In the very next

paragraph of Section 3582(c), Congress expressly authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission with authority to revisit sentences in light of statutory amendments or changes in law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

Moreover, Subsection (b)(6) is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), as it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied notions to sentencing. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity" (or what even constitutes a "gross disparity" to warrant reduction).

  b.  **Regardless, Corona-Gonzalez Cannot Establish That Changes in Law Produce a Grossly Disparate Sentence.**

Even if subsection (b)(6) represented a valid exercise of the Commission's delegated authority, Corona-Gonzalez could not establish extraordinary or

compelling reasons for a sentence reduction under that provision. Assuming for the moment that he is serving an "unusually long sentence"—which the United States does not concede—Corona-Gonzalez has failed to identify a relevant "change in law" or "gross disparity" between the sentence he is serving and the one likely to imposed today, as he must to meet the criteria for relief under subsection (b)(6).

1. *Corona-Gonzalez Fails to Identify a Relevant "Change in Law."*

In support of his motion, Corona-Gonzalez invokes a supposed "intervening" judicial decision, *United States v. Carnell*, 972 F.3d 932 (7th Cir. 2020), which he contends establishes that the sentencing court committed legal error in holding him responsible for at least 150 grams but less than 500 grams of "pure" methamphetamine. Yet, in invoking *Carnell*, Corona-Gonzalez is not relying on a *change* in the law that was not (and could not have been) applicable at his sentencing, such as a subsequent decision by Congress to lower the applicable penalties for his offense. Instead, he seeks to challenge the validity of his judgment based on a judicial decision interpreting existing law in a manner that purportedly supports a claim of legal error that he did not previously recognize.

Importantly, nothing in subsection (b)(6) authorizes courts to find that such a claimed error in the judgment establishes an extraordinary and compelling reason for a sentence reduction under Section 3582(c)(1). *See* U.S.S.G. § 1B1.13(b)(6). For one thing, Congress has specified that the remedy for such claims of error lies through a direct appeal or a motion under 28 U.S.C. § 2255. *See Thacker*, 4 F.4th at 574 (explaining that Section 2255 provides the "principal path" that Congress has

"established for federal prisoners to challenge their sentences" after they have become final). No reason exists to believe that Congress intended to allow defendants to circumvent the limits on that well-established process by affording alternative relief through an amended policy statement regarding compassionate release, especially where, as here, the defendant has already previously filed a Section 2255 motion. (*See* Dkt. No. 129.) *See also Corona-Gonzalez v. United States*, 2013 WL 3724837 (S.D. Ind. July 15, 2013) (unpublished) (denying Corona-Gonzalez's motion).

It would be especially inappropriate to interpret subsection (b)(6) to specifically reach the claimed error here. In *Carnell*, the Seventh Circuit held that a sentencing court cannot solely rely on "the expertise of a drug user, dealer, or law enforcement officer alone to determine that methamphetamine is more than 80% pure." 972 F.3d at 944. In so holding, the *Carnell* court explicitly distinguished a situation where the United States submits lab testing. *See id.* at 943 (quoting *United States v. Walker*, 688 F.3d 416, 425 n.4 (8th Cir. 2012) ("Scientific testing of at least part of a quantity of suspected 'ice' methamphetamine seized from a conspiracy is one of the strongest means by which the government can meet its burden of proving the methamphetamine attributed to a defendant is 'ice' as defined in the Guidelines.")).

Thus, in the best case scenario for Corona-Gonzalez, *Carnell* creates a procedural rule whereby the United States cannot establish drug purity at sentencing based solely on the statements of coconspirators, law enforcement experts, etc. Accordingly, *Carnell* should not be considered a "change" in the law that would necessarily alter "the sentence likely to be imposed" today. U.S.S.G. § 1B1.13(b)(6).

The decision did not alter "the range of conduct or the class of persons that the law punishes"; it only changed "the manner of determining the defendant's culpability." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (emphasis omitted).

Regardless, even if considered a "change in law," *Carnell* does not apply to Corona-Gonzalez's case. Corona-Gonzalez's reliance on *Carnell* stems from a severe misunderstanding of the government's respective burden at trial versus sentencing. Specifically, contrary to Corona-Gonzalez's belief (*see* Dkt. No. 157 at 2, 4), the United States was not obligated to present evidence at trial attesting to the purity of methamphetamine. The trial court properly instructed the jury that the government, while having the burden to establish drug *weight* beyond a reasonable doubt, is not required to prove the degree of *purity* of the methamphetamine. Instead, the government would be obligated to establish the purity of the methamphetamine by a preponderance of the evidence at any subsequent sentencing hearing. *See Carnell*, 972 F.3d at 941 ("The government must prove, albeit only by a preponderance of evidence at sentencing, that the substance was, in fact methamphetamine of at least 80% purity."); *see also United States v. McEntire*, 153 F.3d 424, 432 (7th Cir. 1998) ("The government bears the burden of proving, by a preponderance of the evidence, what type of methamphetamine was involved in an offense.").

Prior to Corona-Gonzalez's first sentencing, the government provided lab results to United States Probation, which in turn cited the results as rationale for holding Corona-Gonzalez responsible for at least 150 grams but less than 500 grams of "pure" methamphetamine. (Dkt No. 157-1 at 6, ¶ 14.) Under *Carnell*, the PSR

contained all the evidence necessary for the sentencing court to find, by a preponderance of the evidence, that Corona-Gonzalez distributed 316.3 grams of actual methamphetamine. Having identified no relevant "change in law," Corona-Gonzalez's motion must be denied.[2]

### 2. *Corona-Gonzalez Fails to Establish a "Gross Disparity" in Sentences.*

Even if *Carnell* constituted a relevant change in law, Corona-Gonzalez cannot establish a gross disparity between the sentence being served and the sentence likely to be imposed today. As relevant here, Corona-Gonzalez was convicted of knowingly distributing 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). The statutory penalty he would face today for that crime is the same as he faced at every stage of the proceeding, namely, a term of imprisonment of no less than 10 years and up to life. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The non-jury finding that

---

[2] Relatedly, neither *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), nor *Alleyne v. United States*, 133 S.Ct. 2151 (2013), are applicable here, contrary to what Corona-Gonzalez may claim. Those cases are implicated only if the non-jury finding—here, the purity of the methamphetamine at issue—increased the mandatory minimum or maximum sentence authorized by the jury's verdict. Neither is the case here. The jury's verdict supported a term of imprisonment between 10 years and up to life. The non-jury finding that Corona-Gonzalez was responsible for 316.3 grams of pure methamphetamine, as opposed to merely 500 grams or more of a substance containing methamphetamine, did not increase the statutory minimum or maximum he faced. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (a person convicted of distributing 50 grams or more of pure methamphetamine faces a term of imprisonment between 10 years and up to life, just as he would if convicted of possessing 500 grams or more of a substance containing methamphetamine). Similarly, having been convicted of a methamphetamine offense, Corona-Gonzalez's frequent references to the First Step Act are irrelevant. *See United States v. Ridlen*, No. 12-CR-40020-NJR-14, 2020 WL 469664, at *2 (S.D. Ill. Jan. 29, 2020) (defendant entitled to no relief under First Step Act for methamphetamine offense).

Corona-Gonzalez ultimately distributed 316.3 grams of pure methamphetamine—as opposed to 500 grams of a substance containing a detectable amount of the drug—would not change the statutory minimum or maximum he faces. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (a person convicted of distributing 50 grams or more of pure methamphetamine faces a term of imprisonment between 10 years and up to life).

As to the advisory guideline range, when first sentenced, Corona-Gonzalez was accessed a total offense score of 36—based on his distributing at least 150 grams but less than 500 grams of pure methamphetamine—and Criminal History Category III, resulting in an advisory guideline range of 235 to 293 months' imprisonment. Today, based on the 2014 amendment to the Guidelines' drug quantity table—which, again, was the subject of his previous motion for reduction of sentence—Corona-Gonzalez would face a total offense score of 34 based on that same drug weight and purity. As noted in the government's prior response brief, Corona-Gonzalez would still be accessed Criminal History Category III,[3] resulting in a guideline range of 188 to 235 months' imprisonment on Counts One and Two—the same range he faced at the time of his first motion for compassionate release. Even if considered a Criminal History Category II—as he has continually urged the Court to do—Corona-Gonzalez would nonetheless face between 168 and 210 months imprisonment on Counts One and Two.

---

[3] In the present motion, Corona-Gonzalez again takes issue with calculation of his criminal history score. (Dkt. No. 157 at 5.) Yet, the Court has already, correctly, overruled those objections. (*See* Dkt. No. 104 at 5.) A motion for relief under Section 3582(c)(1) is an improper avenue to relitigate that issue.

As noted above, Corona-Gonzalez's current sentence on Counts One and Two is 192 months. Even if he were considered today as Criminal History Category II, his current sentence would fall in the middle of his applicable guideline range. As explained below, the Section 3553(a) factors still weigh heavily in favor of a sentence within the advisory guideline range. Thus, there exists no disparity, let alone a gross one, between the sentence Corona-Gonzalez is serving (a sentence in the middle of the applicable guideline range) and the one he would face if sentenced today (a sentence within the applicable guideline range). Without more, his motion fails.

### c. The Section 3553(a) Factors Independently Preclude Relief.

Finally, regardless of the foregoing, relief is warranted here only if the Court, *"after considering the facts set forth in [Section] 3553(a),"* finds that there exists "extraordinary and compelling reasons" to warrant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Here, the relevant Section 3553(a) independently counsel against Corona-Gonzalez's request for a reduction of sentence.

#### 1. *Nature and Circumstances of the Offense*

The nature and circumstances of Corona-Gonzalez's offense are serious under any set of circumstances. The danger and harm created by the distribution of methamphetamine is well documented. From the long-term destruction the drug brings to its users, to the ancillary harm it causes to loved ones and the community writ large, methamphetamine is a modern day scourge. Corona-Gonzalez not only partook in that destructive enterprise but did so as an alien illegally present in this country with total disregard for the harm his actions would cause.

Making matters worse, in delivering the methamphetamine, Corona-Gonzalez carried a loaded firearm in his waistband, creating a heightened risk of violence. In addition, the vehicle he drove to deliver the meetup location contained other individuals, including a juvenile, who could have been harmed had the drug deal gone awry. (Dkt. No. 157-1 at 6, ¶ 10.) Compounding all of those factors is the fact that Corona-Gonzalez's distributed a large volume of "pure" methamphetamine, which poses particular dangers to the long-term health of its users.

### 2. *History and Characteristics of the Defendant*

Corona-Gonzalez's history and characteristics also counsel against early release. Corona-Gonzalez is not simply another convicted drug dealer. He is a methamphetamine trafficker, who distributed a large amount of the drug while armed, and as an alien illegally present in this country. He is also an individual who refused to accept responsibility for his actions, lying under oath in a quest to avoid jail. Specifically, at trial, Corona-Gonzalez falsely claimed that on the day of his arrest, he was simply driving a friend to Wal-Mart and had never before touched the containers of methamphetamine found in his vehicle. He also repeatedly denied carrying a firearm on the day in question, despite the fact that a loaded firearm had been removed from his person by law enforcement. (*Id.* at 7, ¶ 18.)

### 3. *Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment*

Corona-Gonzalez's current sentence also adequately reflects the seriousness of his offense and promotes respect for the law, thus weighing against early release. As noted above, the danger and harm created by individuals who distribute

methamphetamine cannot be overstated. The crime of which Corona-Gonzalez was convicted carries with it a maximum penalty of life imprisonment, evidencing Congress' concern for this type of offense. Corona-Gonzalez's possession of a firearm in furtherance of that drug-trafficking offense bolsters the government's position.

The need to promote respect for the law is also paramount. As noted, not only did Corona-Gonzalez deal methamphetamine, when caught, he refused to take responsibility for his actions, even lying on the stand to avoid accountability. Early release here would vitiate respect for the law, by awarding Corona-Gonzalez an unwarranted windfall in the form of early release, despite his repeated lies.

### 4. Need to Afford Adequate Deterrence And to Protect the Public From Further Crimes of the Defendant

Even assuming Corona-Gonzalez has learned his lesson and the need for specific deterrence has lessened—which frankly is unclear from the record—there exists here a substantial need for general deterrence. The trafficking of a substantial quantity of methamphetamine must carry with it a significant punishment to deter others from attempting to do the same thing. In simplest terms, Corona-Gonzalez's current sentence is the sort of just and fair term that results in a deterrent effect on others who may be committing or contemplating committing such crimes.

### 5. Need to Avoid Unwarranted Sentencing Disparities

The Court must also consider the need to avoid unwarranted sentencing disparities. "The best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); *accord United States v.*

19

*Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). A guideline sentence is presumptively reasonable. *See, e.g., United States v. Nurek*, 578 F.3d 618, 626 (7th Cir. 2009).

As noted above, Corona-Gonzalez's current sentence falls in the middle of the advisory guideline range, even if he were assigned Criminal History Category II. Thus, the best way to curtail unwarranted disparities is for the Court to deny Corona-Gonzalez's motion to reduce his sentence below the advisory guideline range.[4]

### III.   CONCLUSION

WHEREFORE, the United States respectfully requests the Court deny Corona-Gonzalez's *Pro Se* Motion for a Sentence Reduction.


Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:   */s/ Michelle P. Brady*
Michelle P. Brady
Assistant United States Attorney
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
Telephone: (317) 226-6333
Email: Michelle.Brady@usdoj.gov

---

[4] Relatedly, the Court should summarily reject Corona-Gonzalez's assertion that because he is an illegal alien facing deportation upon release, the Court should modify his sentence. The adoption of such a rule would create an unjustified windfall for those convicted of drug-trafficking offenses while illegally present in this country. Put differently, an unwarranted sentencing disparity would exist between "citizen" drug dealers and an illegal-alien dealer, a perverse result to say the least.

**CERTIFICATE OF SERVICE**

I certify that on January 3, 2024, a copy of the foregoing United States'
Response in Opposition to Defendant's *Pro Se* Motion for a Reduction of Sentence was
filed electronically. Notice of this filing was mailed, by First-Class Mail, postage
prepaid and properly addressed to the following:

Juan Antonio Corona-Gonzalez
Reg. No. 08825-028
USP Lompoc
3901 Klein Blvd.
Lompoc, CA 93436

By:     */s/ Michelle P. Brady*
        Michelle P. Brady
        Assistant United States Attorney